IN THE UNITED STATES DISTRICT COURT
DISTRICT OF FLORIDA

| | |
|---|---|
| Robert Hinkle and Brenda Hinkle<br><br>v.<br><br>Continental Motors Inc. d/b/a Continental Motors Group; Continental Motors Services, Inc.; Cirrus Design Corporation d/b/a Cirrus Aircraft; Cirrus Industries, Inc.; Custom Sensors & Technologies; and Kavlico Corp. | CASE NO.<br><br><br>JURY TRIAL |

## COMPLAINT

1.      Plaintiff, Robert Hinkle, is an individual and resident of Florida residing at 5415 Azure Way, Sarasota, Florida 34242.

2.      Plaintiff, Brenda Hinkle, is an individual and resident of Florida residing at 5415 Azure Way, Sarasota, Florida 34242.

3.      Defendant Continental Motors, Inc. d/b/a Continental Motors Group (hereafter "Continental") is a Delaware corporation that maintains its principal place of business at 2039 Broad Street, Mobile, Alabama 36615-1293.

4.      Defendant Continental Motors Services, Inc. is a Delaware corporation that maintains its principal place of business at 2039 Broad Street, Mobile, Alabama 36615-1293.

5.      Defendants Continental Motors Inc. and Continental Motors Services, Inc. are collectively referred to as the "Continental defendants."

6.      Defendant Cirrus Design Corporation d/b/a Cirrus Aircraft (hereinafter "Cirrus Design"), is a Wisconsin corporation that maintains its principal place of business at 4515 Taylor Circle, Duluth, Minnesota 55811.

7.     Defendant Cirrus Industries, Inc. is believed and therefore alleged to be a Wisconsin corporation with its principal place of business at 4515 Taylor Circle, Duluth, Minnesota 55811.

8.     Defendant Cirrus Industries, Inc. and Cirrus Design Corporation d/b/a Cirrus Aircraft are collectively referred to herein as the "Cirrus defendants."

9.     Defendant Kavlico Corporation is a California corporation that maintains its principal place of business at 1461 Lawrence Drive, Thousand Oaks, CA.

10.     Defendant Custom Sensors and Technologies (CSI) a/k/a d/b/a Kavlico Pressure Sensors is a corporation that maintains its principal place of business at 235 E. Main St., Suite 102A, Northville, MI 48167, USA.

11.     Defendants CSI and Kavlico Corporation are collectively referred to herein as the "Sensor defendants"

***Jurisdiction and Venue***

12.     This is an action for damages in excess of the jurisdictional limits of this Court, exclusive of costs and interest and otherwise within the jurisdiction of this Court.

13.     This Court has *in personam* jurisdiction over all of the defendants. All defendants do business within the State of Florida, by availing themselves to the business opportunities here, advertising the availability of parts and information, shipping parts and literature into the state, and receiving money from those businesses in this state who order goods, services, and parts, and pay for them.  In addition, defendants supply literature to aircraft owners located within the state, and to mechanics, fixed base operators, and others who perform aircraft maintenance in this state for purposes of providing information and knowledge as to parts that can be purchased from the defendants for the repair or replacement of aircraft and their components.

14.     Jurisdiction is further proper as the defendants routinely sell their products to Florida.

15.     Further, jurisdiction is proper as the accident aircraft was original sold to Mr. Hinkle and his corporation in the State of Florida.

16.     All defendants maintain systematic and continuous contacts with Florida and/or have registered agents here.  Jurisdiction is proper under the Florida Long Arm Statute and the Due Process clause of the United States Constitution.

17.     Venue is proper in that each of the defendants regularly conduct business in this County and/or may be served here.  Venue is further proper as the defendants regularly conduct business here and avail themselves to this County.

*Factual Background*

18.     This lawsuit arises from the November 28, 2014 crash of a Cirrus SR22T, bearing registration number N227RR.

19.     The aircraft departed that morning from Sarasota/Bradenton International Airport (SRQ) in Sarasota, Florida under visual meteorological conditions, and operated under 14 Code of Federal Regulations (CFR) Part 91 on an instrument flight plan.

20.     The intended destination of the accident flight was Orangeburg Municipal Airport (OGB) in Orangeburg, South Carolina.

21.     Prior to departing SRQ, Mr. Hinkle, the aircraft's pilot performed a thorough preflight inspection on the accident aircraft.

22.     Mr. Hinkle then departed Sarasota with his wife, Brenda Hinkle, and two passengers.

23.     During the flight, the oil pressure in the accident aircraft began to drop rapidly, dropping to zero over a period of about two seconds at about 11:58 a.m. eastern standard time.

24.     At that time the aircraft was flying at about 9,000 feet mean sea level in cruise flight near the Hampton-Varnville Airport (3J0) in Hampton, South Carolina.

25.     Shortly after the oil pressure fell to zero, the engine began to lose power.

26.     This power loss is confirmed by the falling manifold pressure and exhaust gas temperatures in the data recorded by the aircraft's onboard Remote Data Module (RDM).

27.     Mr. Hinkle enrichened the mixture and adjusted the throttle in order to attempt to restore power to the engine, however these actions had no effect on its operation.

28.     During this time, Mr. Hinkle began to lose altitude, as the engine was wind-milling and not producing sufficient power to keep his aircraft in level flight.

29.     His oil pressure never returned.

30.     He further never received the commanded amount of fuel to the engine when he moved the throttle.

31.     In fact, the fuel system, including the fuel pump and associated components, never delivered the proper amount of fuel into the engine despite Mr. Hinkle's efforts.

32.     Mr. Hinkle annunciated an emergency after the loss of oil pressure and engine control to Air Traffic Control.

33.     During that time Mr. Hinkle searched for the nearest airport, and located 3J0, which the air traffic controller confirmed.

34.     The airport was 7.9 miles from Mr. Hinkle's position.

35.     While Mr. Hinkle located the airport, his aircraft could not glide far enough to make a successful emergency landing.

36.     Mr. Hinkle asked his passengers to tighten their safety harnesses, and activated the ballistic parachute system ("CAPS") which equipped the aircraft when he was certain the aircraft would not make the runway.

37.     The CAPS system deploys a parachute from the airframe, which renders it uncontrollable but is intended to be used in scenarios such as engine failures.

38.     The CAPS system never fully deployed, despite being pulled by the pilot with ample time for it to deploy and ensure a safe landing.

39.     The aircraft then impacted trees about ¾ of a nautical mile from the end of the runway of 3J0.

40.     The aircraft then fell to the ground, injuring its occupants, and causing serious injuries to Mrs. Hinkle.

41.     While this was not Mr. Hinkle's first Cirrus aircraft, the accident aircraft was nearly new, with just over 50 hours on it since Mr. Hinkle purchased it new.

42.     The engine of the accident aircraft was nearly new, and was within all required maintenance intervals.

43.     Post-crash investigation confirms that the engine was not able to make required power at the time of the accident.

44.     This investigation also confirms that the oil pressure transducer did not function properly.

45.     Further, the aircraft engine did not produce commanded power, due to it not receiving a proper amount of fuel due to defects in the fuel delivery system, including the fuel pump, turbo and fuel servo.

***Damages***

46.     Plaintiffs Robert and Brenda Hinkle were both injured as a result of this crash.

47.     Plaintiffs bring this action against Defendants in strict liability, negligence, and breach of warranties, negligent misrepresentation, breach of contract, recklessness, outrageousness, willful and wanton conduct, and fraud seeking damages for their injuries and losses.  Plaintiffs seek recovery of all damages to which he is entitled.

48.     Brenda Hinkle sustained serious injuries, including but not limited to, a closed fracture of the proximal shaft of the right humerus; a concussion with loss of consciousness; three distinct fractures of the sternum, rib fractures to her right ribs 2-7 and left ribs 2-7; a pulmonary contusion; transverse process fractures of L2-L4 vertebrae; adrenal hemmorage; lumbar vertebrae burst fractures L1-L2; and a left ankle fracture.

49.     These injuries required extensive treatment, fusions, installation of instrumentation and left Mrs. Hinkle in severe pain and with limited mobility.

50.     Mr. Hinkle further lost time from work, wages and salaries due to Mrs. Hinkles' injuries.

51.     Both Mr. Hinkle and Mrs. Hinkle demand damages for their respective losses of consortium.

52.     Damages are demanded for the willful, unjustifiable, and outrageous conduct by the defendants in selling a defective aircraft, engine and engine components, despite knowing of the presence of such defects.

## COUNT I

### (STRICT LIABILITY)

#### *Plaintiff Robert Hinkle v. The Cirrus Defendants*

53.     Plaintiff incorporate the above paragraphs as though fully set forth at length herein.

54.     The Cirrus defendants are in the business of designing, inspecting, testing, distributing, selling supplies, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing and selling aircraft, and are the type certificate holders and/or production certificate holders responsible for ensuring continuing airworthiness for the accident model aircraft.

55.     The Cirrus defendants designed, developed, manufactured, assembled, inspected, distributed, sold, supplying, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft, its engine and its component parts including the engine, engine oil system and fuel delivery system as well as its indication systems, which were, defective and unreasonably dangerous.

56.     The accident aircraft and component parts described herein were not reasonably fit, suitable, or safe for their intended purpose because they deviated from design standards, deviated from design specifications, performance specifications, and airworthiness standards, failed to contain adequate warnings or instructions, and were designed in a defect manner.

57.     In addition the Cirrus defendants sold the accident aircraft, its engine, and component parts to its first user.

58.     The dangerous defects which caused this accident existed at the time the accident aircraft, its engine and component parts were first sold by the Defendants.

59.     At the time the product left control of the manufacturers reasonably feasible and practical alternative designs that if incorporated into the accident aircraft and the components hereinafter described, would have prevented the accident.

60.     The accident aircraft, its engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident, to Mr. Hinkle.

61.     The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft and its engine unreasonably dangerous included, but are not limited to:

a.      An inability of the engine to properly function under all flight conditions;

b.      Unreliable indications of engine parameters, including, but not limited to, oil pressure;

c.      Improper selection of the powerplant;

d.      Improper selection of the turbocharging system;

e.      Improper design of the turbocharging system;

f.      Improper design and selection of the fuel delivery system;

g.      Improper selection of engine components;

h.      Improper warnings concerning loss of power;

i.      Improper warnings concerning loss of oil pressure;

j.      Improper instructions concerning loss of power;

k.      Improper instructions concerning loss of oil pressure;

l.      Improper design and selection of the oil pressure transducer;

m.      Failure to ensure that fuel would be supplied under all conditions;

n.      Failure to properly test the accident engine;

o.      Failure to provide a means of restoring engine power;

p.      Failure to select a proper fuel delivery system;

q.      Improper and dangerous selection of the fuel pump;

r.      Failure to select a boost pump capable of supplying adequate fuel to the engine;

s.      Failure to warn owners, pilots, operators and mechanics of the defects in the accident aircraft;

t.      Dangerous and defective design, manufacture, and certification of the aircraft and its powerplant and associated components;

u.      Dangerous and defective failure to warn owners, pilots, operators and mechanics of the failures that could occur;

v.      Improper and dangerous design of the CAPS system;

w.      Failure to provide adequate instructions for use of the CAPS system;

x.      Failure to warn of dangers of CAPS system;

y.      Defective design of the aircraft which was not crashworthy;

z.      Improper design of seats;

aa.     Improper design of passenger restraints;

bb.     Failure to prevent against injuries to passengers with the CAPS system;

cc.     Defective and uncrashworthy design of the seats and restraints;

dd.     Improper selection of materials used in the restraints and seats; and

ee.     Other defects which will be determined.

62.    As a direct and proximate result of these failures and design defects, the accident aircraft, its engine and engine components were unreasonably dangerous, defective and did cause Plaintiff's injuries, as described above.

63.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium,

pecuniary injuries and damages as well as loss of earnings. Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT II

### (NEGLIGENCE)

### *Plaintiff Robert Hinkle v. The Cirrus Defendants*

64.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

65.    The Cirrus defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller of the accident aircraft, its engine and associated components, and to ensure the airworthiness of the aircraft.

66.    In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

67.    The Cirrus defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

a.    Failing to select an engine which would properly function under all flight conditions;

b.    Failing to design and install indications of engine parameters, including, but not limited to, oil pressure which functioned properly;

c.    Failing to select an engine which properly functioned under all flight conditions;

10

d.      Failing to design and manufacture a system which gave reliable indications of engine parameters, including, but not limited to, oil pressure;

e.      Improperly selecting the powerplant;

f.      Improperly selecting the turbocharging system;

g.      Improperly designing of the turbocharging system;

h.      Improperly designing and selecting the fuel delivery system;

i.      Improperly selecting engine components and accessories;

j.      Failing to provide proper warnings concerning loss of power;

k.      Failing to provide proper warnings concerning loss of oil pressure;

l.      Failing to provide proper instructions concerning loss of power;

m.      Failing to provide proper instructions concerning loss of oil pressure;

n.      Failing to properly design and select the oil pressure transducer;

o.      Failing to ensure that fuel would be supplied under all conditions;

p.      Failing to properly test the accident engine;

q.      Failing to provide a means of restoring engine power;

r.      Failing to design and select a proper fuel delivery and metering system;

s.      Selecting a dangerous and defective fuel pump;

t.      Failing to select a boost pump capable of supplying adequate fuel to the engine;

u.      failing to provide an aircraft and aircraft components such that the aircraft was safe for flight;

v.      failing to provide an aircraft and aircraft components and engine system that complied with regulations;

w.      failing to design, manufacture, certify, import and sell an engine that is not prone to power losses;

x.      failing to warn owners, pilots, operators and mechanics of the failures that could occur;

y.      failing to warn owners, pilots, operators and mechanics of the probability of failures;

z.      failing to provide adequate maintenance and/or continuing airworthiness instructions, emergency procedures and warnings for the accident aircraft

aa.     Failing to properly design and manufacture the CAPS system;

bb.     Failing to provide adequate instructions for use of the CAPS system;

cc.     Failing to warn of dangers of CAPS system;

dd.     Defectively designing an the aircraft which was not crashworthy;

ee.     Improperly designing and manufacturing of seats;

ff.     Improperly designing passenger restraints;

gg.     Failing to prevent against injuries to passengers with the CAPS system;

hh.     Defectively designing of the seats and restraints which were not crashworthy;

ii.     Improperly selecting materials used in the restraints and seats; and

jj.     Other negligent acts which will be determined.

68.     As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium,

pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

69.     Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

70.     As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

71.     Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT III

### (BREACH OF CONTRACT)

### *Plaintiff Robert Hinkle v. The Cirrus Defendants*

72.     Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

73.     Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants.

74.     In exchange for valuable consideration, the Cirrus defendants did agree to provide him an aircraft.

75.     Plaintiff was the intended beneficiaries of the agreement between the Defendant and the aircraft's owner, where in exchange for an agreement to pay the charges rendered, the defendants would deliver an aircraft and engine and accessories in an airworthy and safe condition.

76.     There also arose an agreement that in exchange for this consideration, the aircraft, engine and components which the Cirrus defendants provided would be safe and airworthy.

77.     The contract evidencing this agreement is attached hereto as Exhibit A.

78.     In breach of that contract, the defendants did fail to supply an aircraft, engine and components as agreed.

79.     As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT IV

### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

### *Plaintiff Robert Hinkle v. The Cirrus Defendants*

80.     Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

81.     The Cirrus defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, integrating and assembling aircraft, including the accident aircraft and its engine and components as well as associated operation, repair, overhaul, installation and product support materials.

82.     The defendants described and advertised their goods for sale, including the accident aircraft, engine and components.  Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

83.     These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

84.     In addition, these defendants provided an express warranty for the accident aircraft, its engine and component parts.

85.     These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft, its engine and component parts.

86.     Defendants expressly and impliedly warranted that the accident aircraft and its engine would operate safely.

87.     These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to the Plaintiffs.

88.     Plaintiffs further relied upon these warranties in operating and traveling in the accident aircraft.

89.     As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels.  These implied warnings ran from Defendants to Plaintiffs.

90.     As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.  These implied warranties ran from Defendants to Plaintiffs.

91.     Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  These implied warranties ran to the Plaintiffs.

92.     By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

93.     The breaches of warranties included the following:

     a.     providing an aircraft and engine components that were not airworthy;

     b.     providing an aircraft and engine that was not safe for flight;

     c.     providing an engine indicating system that was defective;

     d.     providing an aircraft and engine that did not comply with regulations;

     e.     providing engine systems that were not safe for flight;

     f.     providing engine systems that did not comply with regulations;

     g.     providing engine indicating systems that were not safe for flight;

h.      not providing adequate instructions, warnings and information concerning the accident aircraft and its component parts and systems;

i.      providing an aircraft and engine which developed unsafe conditions between overhaul periods;

j.      not providing a crashworthy aircraft; and

k.      providing an engine which did fail during normal flight regimes.

94.      As a direct and proximate result of the foregoing breaches, the accident aircraft lost power and crashed resulting in the above described injuries and damages.

95.      As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT V

### (FRAUD)

### *Plaintiff Robert Hinkle v. The Cirrus Defendants*

96.      Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

97.    These defendants did knowingly misrepresent that its aircraft, engine and components parts, including the engine indicating system, fuel delivery system, and oil system were safe for use and non-defective.

98.    In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in this aircraft and engine, despite knowing the history of engine failures in this model aircraft, and the dangers associated with such a power loss.

99.    The defendants did make this misrepresentation knowingly, to entice customers to purchase their aircraft, engine and components parts, including the engine indicating system, fuel delivery system, and oil system and services.

100.    By warranting, affirming and marketing defective components and aircraft as safe, the defendants intended to entice buyers for their aircraft.

101.    Notwithstanding the actual knowledge of the unreasonably dangerous nature of this aircraft and engine, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

102.    In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft and its engine and components would be safe for flight.

103.    However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft and its engine as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

104.   If not for the Defendant's misrepresentations, omissions and concealment Plaintiffs would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

105.   As a direct and proximate result of the foregoing breaches, the aircraft crashed and the Hinkles suffered damages and injuries described above, as well as pre-impact fear, severe emotional distress, and conscious pain and suffering, serious personal injuries, loss of services, aid and society, pecuniary injuries and damages including, but not limited to, loss of earnings and earning capacity.  Plaintiffs are entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VI

### (STRICT LIABILITY)

#### *Plaintiff Robert Hinkle v. The Continental Defendants*

106.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

107.   The Continental defendants are in the business of designing, inspecting, testing, distributing, selling, supplying, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing and selling aircraft engines, and are the type certificate holders and/or production certificate holders responsible for ensuring continuing airworthiness for the accident model aircraft engine.

108.   The Continental defendants designed, developed, manufactured, assembled, inspected, distributed, sold supplies, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft engine and its component parts including the engine oil system and fuel delivery system as well as its indication systems, which were, defective and unreasonably dangerous.

109.   In addition the Continental defendants sold the accident aircraft engine, and component parts to its first user.

110.   The dangerous defects which caused this accident existed at the time the accident aircraft engine and component parts were first sold by the Defendants.

111.   The accident aircraft engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident, to Mr. Hinkle.

112.   The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft engine unreasonably dangerous were, but are not limited to:

    a.    An inability of the engine to properly function under all flight conditions;

    b.    Unreliable indications of engine parameters, including, but not limited to, oil pressure;

    c.    Improper selection of the powerplant;

    d.    Improper selection of the turbocharging system;

    e.    Improper design of the turbocharging system;

    f.    Improper design and selection of the fuel delivery system;

    g.    Improper selection of engine components;

h.     Improper warnings concerning loss of power;

i.     Improper warnings concerning loss of oil pressure;

j.     Improper instructions concerning loss of power;

k.     Improper instructions concerning loss of oil pressure;

l.     Improper design and selection of the oil pressure transducer;

m.     Failure to ensure that fuel would be supplied under all conditions;

n.     Failure to properly test the accident engine;

o.     Failure to provide a means of restoring engine power;

p.     Failure to select a proper fuel delivery system;

q.     Improper and dangerous selection of the fuel pump;

r.     Improper design of the fuel pump;

s.     Failure to ensure the fuel pump functioned under all conditions;

t.     Failure to select a boost pump capable of supplying adequate fuel to the engine;

u.     Failure to warn owners, pilots, operators and mechanics of the defects in the accident aircraft;

v.     Dangerous and defective design, manufacture, and certification of the aircraft and its powerplant and associated components;

w.     Dangerous and defective failure to warn owners, pilots, operators and mechanics of the failures that could occur; and

x.     Other defects which will be determined.

113.     As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain

and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings. Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT VII

### (NEGLIGENCE)

### *Plaintiff Robert Hinkle v. The Continental Defendants*

114.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

115.    The Continental defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller of the accident aircraft engine and associated components, and to ensure the airworthiness of the aircraft engine.

116.    In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

117.    The Continental defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

a.    Failing to provide an engine which would properly function under all flight conditions;

b.    Failing to design and install proper indicators of engine parameters, including, but not limited to oil pressure, which functioned properly;

c.    Improperly designing and manufacturing the powerplant;

22

d.      Improperly designing and manufacturing the turbocharging system and its components;

e.      Failing to properly design and manufacture the induction system;

f.      Improperly designing and selecting the fuel delivery system;

g.      Improperly selecting engine components and accessories;

h.      Failing to provide proper warnings concerning loss of power;

i.      Failing to provide proper warnings concerning loss of oil pressure;

j.      Failing to provide proper instructions concerning loss of power;

k.      Failing to provide proper instructions concerning loss of oil pressure;

l.      Failing to properly design and select the oil pressure transducer;

m.      Failing to ensure that fuel would be supplied under all conditions;

n.      Failing to properly test the accident engine;

o.      Failing to provide a means of restoring engine power;

p.      Failing to design and select a proper fuel delivery and metering system;

q.      Selecting a dangerous and defective fuel pump;

r.      Failing to select a boost pump capable of supplying adequate fuel to the engine;

s.      Failing to provide an engine and associated components which would be safe and fit for flight;

t.      Failing to provide an aircraft engine system that complied with regulations;

u.      Failing to warn owners, pilots, operators and mechanics of the failures that could occur;

23

v.     Failing to warn owners, pilots, operators and mechanics of the probability of failures;

w.     Failing to provide adequate maintenance and/or continuing airworthiness instructions, emergency procedures and warnings for the accident aircraft engine; and

x.     Other negligent acts which will be determined.

118.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

119.   Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

120.   As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

121.   Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT VIII**

(BREACH OF CONTRACT)

*Plaintiff Robert Hinkle v. The Continental Defendants*

122.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

123.    Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants, who supplied it with a brand new engine supplied by the Continental defendants.

124.    In exchange for valuable consideration, the Continental defendants did agree to provide him an aircraft engine and component parts.

125.    There also arose an agreement that in exchange for this consideration, the aircraft engine and components which the Continental and Cirrus defendants provided would be safe and airworthy.

126.    The contract evidencing this agreement is attached hereto as Exhibit A.

127.    In breach of that contract, the defendants did fail to supply an aircraft, engine and components as agreed.

128.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**COUNT IX**

(BREACH OF EXPRESS AND IMPLIED WARRANTIES)

*Plaintiff Robert Hinkle v. The Continental Defendants*

129.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

130.   The Continental defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, integrating and assembling aircraft engines, including the accident aircraft engine and components as well as associated operation, repair, overhaul, installation and product support materials.

131.   The defendants described and advertised their goods for sale, including the accident aircraft engine and components.  Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

132.   These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

133.   In addition, these defendants provided an express warranty for the accident aircraft engine and component parts.

134.   These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft engine and component parts.

135.   Defendants expressly and impliedly warranted that the accident aircraft and its engine would operate safely.

136.    These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiff.

137.    Plaintiffs further relied upon these warranties in operating and traveling in the accident aircraft.

138.    As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels.  These implied warnings ran from Defendants to Plaintiff.

139.    As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.  These implied warranties ran from Defendants to Plaintiff.

140.    Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  These implied warranties ran to the Plaintiffs.

141.    By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

142.    The breaches of warranties included the following:

   a.     Providing an aircraft engine components that were not airworthy;

   b.     Providing an aircraft engine that was not safe for flight;

   c.     Providing an engine indicating system that was defective;

      d.     Providing an aircraft engine that did not comply with regulations;

      e.     Providing engine systems that were not safe for flight;

      f.     Providing engine systems that did not comply with regulations;

      g.     Providing engine indicating systems that were not safe for flight;

      h.     Not providing adequate instructions, warnings and information concerning the accident aircraft and its component parts and systems;

      i.     Providing an aircraft engine which developed unsafe conditions between overhaul periods; and

      j.     Providing an engine which did fail during normal flight regimes.

143.    As a direct and proximate result of the foregoing breaches, the accident aircraft lost power and crashed resulting in the above described injuries and damages to Plaintiff.

144.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

### COUNT X

### (FRAUD)

### *Plaintiff Robert Hinkle v. The Continental Defendants*

145.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

146.    These defendants did knowingly misrepresent that its aircraft engine and components parts, including the engine indicating system, fuel delivery system, and oil system were safe for use and non-defective.

147.    In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in this aircraft engine, despite knowing the history of engine failures in this model, and the dangers associated with such a power loss.

148.    The defendants did make this misrepresentation knowingly, to entice customers to purchase their engine and components parts, including the engine indicating system, fuel delivery system, fuel pump, and oil system and services.

149.    By warranting, affirming and marketing defective components and the aircraft engine as safe, the defendants intended to entice buyers for their engines.

150.    Notwithstanding the actual knowledge of the unreasonably dangerous nature of this aircraft engine, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

151.    In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft engine and components would be safe for flight.

152.    However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft engine and component parts as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

153. If not for the Defendant's misrepresentations, omissions and concealment, Plaintiff would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

154. As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings. Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XI

### (STRICT LIABILITY)

### *Plaintiff Robert Hinkle v. The Sensor Defendants*

155. Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

156. The Sensor defendants are in the business of designing, inspecting, testing, distributing, selling, supplying, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing components used in the indicating system of the accident aircraft, including but not limited to, the oil pressure transducer.

157. The Sensor defendants designed, developed, manufactured, assembled, inspected, distributed, sold supplies, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft's engine sensors, including the oil pressure transducer.

158.    In addition these defendants sold the oil pressure transducer and other sensors for use in the accident aircraft, its engine, and component parts to its first user.

159.    The dangerous defects which caused this accident existed at the time the component parts were first sold by the Defendants.

160.    The accident aircraft, its engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident.

161.    The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft and its engine unreasonably dangerous included, but are not limited to:

a.      An inability of the oil pressure transducer to properly function under all flight conditions;

b.      Unreliable indications of engine parameters, including, but not limited to, oil pressure;

c.      Defective design of the oil pressure transducer;

d.      Defective manufacture of the oil pressure transducer;

e.      Failure to design a transducer not prone to premature failure;

f.      Failure to warn of false readings;

g.      Failure to provide a means of safeguarding against false readings;

h.      Failing to provide sufficient maintenance instructions;

i.      Failing to provide sufficient operating and installation instructions;

j.      Failing to design transducers with failsafe measures which prevent against incorrect readings without a warning of their falsity;

k.      Failing to report product failures;

l.      Failure to sufficiently test the sensors in the accident aircraft, including but not limited to the oil pressure transducer;

m.     Failure to ensure proper wiring of the sensors in the accident aircraft;

n.      Failure to properly integrate the sensors with the avionics in the accident aircraft;

o.      Failing to provide an means of verifying the accuracy of readings from sensors in the accident aircraft, including specifically the oil pressure transducer; and

p.      Other defects which will be proven at trial.

162.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XII

### (NEGLIGENCE)

### *Plaintiff Robert Hinkle v. The Sensor Defendants*

163.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

164.    The Sensor defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller sensor and transducer components used in the accident aircraft and its engine.

165.    In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

166.    The Sensor defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

      a.    Failing to select an engine which would properly function under all flight conditions;

      b.    Designing and manufacturing an oil pressure transducer which would not properly function under all flight conditions;

      c.    Failing to provide transducers which gave reliable indications of engine parameters, including, but not limited to, oil pressure;

      d.    Defectively designing the oil pressure transducer;

      e.    Defectively manufacturing the oil pressure transducer;

      f.    Failing to design a transducer not prone to premature failure;

      g.    Failing to warn of false readings;

      h.    Failing to provide a means of safeguarding against false readings;

      i.    Failing to provide sufficient maintenance instructions;

      j.    Failing to provide sufficient operating and installation instructions;

      k.    Failing to design transducers with failsafe measures which prevent against incorrect readings without a warning of their falsity;

      l.    Failing to report product failures;

      m.     Failing to sufficiently test the sensors in the accident aircraft, including but not limited to the oil pressure transducer;

      n.     Failing to ensure proper wiring of the sensors in the accident aircraft;

      o.     Failing to properly integrate the sensors with the avionics in the accident aircraft;

      p.     Failing to provide an means of verifying the accuracy of readings from sensors in the accident aircraft, including specifically the oil pressure transducer; and

      q.     Other negligent acts which will be proven at trial.

167.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

168.    Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

169.    As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

170.    Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XIII

### (BREACH OF CONTRACT)

### *Plaintiff Robert Hinkle v. The Sensor Defendants*

171.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

172.    Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants which contained component parts supplied from the Sensor defendants.

173.    In exchange for valuable consideration, these defendants did agree to provide sensors, including the oil pressure transducer, which were safe and free of defects.

174.    There also arose an agreement that in exchange for this consideration, components supplied by the Sensor defendants would be safe for use and airworthy.

175.    Plaintiff was the intended beneficiary of this contract.

176.    The contract evidencing this agreement is attached hereto as Exhibit A.

177.    In breach of that contract, the defendants did fail to supply a components as agreed.

178.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XIV

### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

### *Plaintiff Robert Hinkle v. The Sensor Defendants*

179.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

180.   The Sensor defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, integrating and assembling sensors and transducers, including those used in the accident aircraft and its engine and components as well as associated operation, repair, overhaul, installation and product support materials.

181.   The defendants described and advertised their goods for sale, including the transducers used on the accident aircraft, engine and components.   Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

182.   These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

183.   In addition, these defendants provided an express warranty for the accident aircraft transducers, specifically its oil pressure transducer.

184.   These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft's components, specifically its oil pressure transducer.

185.   Defendants expressly and impliedly warranted that the accident aircraft's components, specifically its oil pressure transducer, would operate safely.

186.   These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiffs.

187.   Plaintiff further relied upon these warranties in operating the accident aircraft.

188.   As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels.  These implied warnings ran from Defendants to Plaintiffs.

189.   As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.  These implied warranties ran from Defendants to Plaintiff.

190.   Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  These implied warranties ran to the Plaintiff.

191.   By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

37

192.    The breaches of warranties included the following:

a.      Providing sensor components, including the oil pressure transducer, that was defective and not airworthy;

b.      providing sensor components, including the oil pressure transducer, that was not safe for flight;

c.      providing and integrating engine indicating system components that were defective;

d.      providing components that did not comply with regulations;

e.      not providing adequate instructions, warnings and information concerning the sensor components, including the oil pressure transducer; and

f.      providing an components which developed unsafe conditions between overhaul periods and within their useful life.

193.    As a direct and proximate result of the foregoing breaches, the accident aircraft indicated zero oil pressure, and subsequently lost power and crashed resulting in the above described injuries and damages to Plaintiff.

194.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XV

### (Fraud)

### *Plaintiff Robert Hinkle v. The Sensor Defendants*

195.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

196.    These defendants did knowingly misrepresent that it's the parts, including the oil pressure transducer, were safe for use and non-defective.

197.    In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in the parts they supplied, despite knowing the history of such failures, and the dangers associated with such a failure.

198.    The defendants did make this misrepresentation knowingly, to entice customers to purchase their transducers and sensors.

199.    By warranting, affirming and marketing defective components as safe, the defendants intended to entice buyers.

200.    Notwithstanding the actual knowledge of the unreasonably dangerous and defective nature of component, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

201.    In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft and its engine and components would be safe for flight.

202.    However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft and its engine and sensor components as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

203.    If not for the Defendant's misrepresentations, omissions and concealment Plaintiffs would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

204.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XVI

### (RECKLESSNESS, OUTRAGEOUSNESS, WILLFUL AND WANTON CONDUCT)

### *Plaintiff Robert Hinkle v. All Defendants*

205.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

206.    Defendants, and each and every one of them, knew that the failure to properly design, manufacture, inspect, maintain, and/or repair the accident aircraft, its engine, fuel delivery system, oil system, engine indicating system, oil pressure transducer, fuel pump and/or

associated materials would inevitably result in loss of engine power with the likelihood of serious personal injury or death.

207.    Notwithstanding the actual knowledge of the defects and deficiencies in the accident aircraft, its engines, fuel delivery system, oil system, fuel pump, oil pressure transducer, and/or associated materials, Defendants recklessly, willfully, wantonly, and/or outrageously, and in dereliction of their responsibilities failed to correct said defects or warn of said defects and likelihood of serious personal injury and/or death.

208.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XVII

### (STRICT LIABILITY)

### *Plaintiff Brenda Hinkle v. The Cirrus Defendants*

209.    Plaintiff incorporate the above paragraphs as though fully set forth at length herein.

210.    The Cirrus defendants are in the business of designing, inspecting, testing, distributing, selling supplies, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing and selling aircraft, and are the type certificate holders and/or production certificate holders responsible for ensuring continuing airworthiness for the accident model aircraft.

211.    The Cirrus defendants designed, developed, manufactured, assembled, inspected, distributed, sold, supplying, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft, its engine and its component parts including the engine, engine oil system and fuel delivery system as well as its indication systems, which were, defective and unreasonably dangerous.

212.    The accident aircraft and component parts described herein were not reasonably fit, suitable, or safe for their intended purpose because they deviated from design standards, deviated from design specifications, performance specifications, and airworthiness standards, failed to contain adequate warnings or instructions, and were designed in a defect manner.

213.    In addition the Cirrus defendants sold the accident aircraft, its engine, and component parts to its first user.

214.    The dangerous defects which caused this accident existed at the time the accident aircraft, its engine and component parts were first sold by the Defendants.

215.    At the time the product left control of the manufacturers reasonably feasible and practical alternative designs that if incorporated into the accident aircraft and the components hereinafter described, would have prevented the accident.

216.    The accident aircraft, its engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident, to Mr. Hinkle.

217.    The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft and its engine unreasonably dangerous included, but are not limited to:

a.    An inability of the engine to properly function under all flight conditions;

b. Unreliable indications of engine parameters, including, but not limited to, oil pressure;

c. Improper selection of the powerplant;

d. Improper selection of the turbocharging system;

e. Improper design of the turbocharging system;

f. Improper design and selection of the fuel delivery system;

g. Improper selection of engine components;

h. Improper warnings concerning loss of power;

i. Improper warnings concerning loss of oil pressure;

j. Improper instructions concerning loss of power;

k. Improper instructions concerning loss of oil pressure;

l. Improper design and selection of the oil pressure transducer;

m. Failure to ensure that fuel would be supplied under all conditions;

n. Failure to properly test the accident engine;

o. Failure to provide a means of restoring engine power;

p. Failure to select a proper fuel delivery system;

q. Improper and dangerous selection of the fuel pump;

r. Failure to select a boost pump capable of supplying adequate fuel to the engine;

s. Failure to warn owners, pilots, operators and mechanics of the defects in the accident aircraft;

t. Dangerous and defective design, manufacture, and certification of the aircraft and its powerplant and associated components;

43

u.    Dangerous and defective failure to warn owners, pilots, operators and mechanics of the failures that could occur;

v.    Improper and dangerous design of the CAPS system;

w.    Failure to provide adequate instructions for use of the CAPS system;

x.    Failure to warn of dangers of CAPS system;

y.    Defective design of the aircraft which was not crashworthy;

z.    Improper design of seats;

aa.    Improper design of passenger restraints;

bb.    Failure to prevent against injuries to passengers with the CAPS system;

cc.    Defective and uncrashworthy design of the seats and restraints;

dd.    Improper selection of materials used in the restraints and seats; and

ee.    Other defects which will be determined.

218.    As a direct and proximate result of these failures and design defects, the accident aircraft, its engine and engine components were unreasonably dangerous, defective and did cause Plaintiff's injuries, as described above.

219.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XVIII

### (NEGLIGENCE)

### *Plaintiff Brenda Hinkle v. The Cirrus Defendants*

220.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

221.    The Cirrus defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller of the accident aircraft, its engine and associated components, and to ensure the airworthiness of the aircraft.

222.    In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

223.    The Cirrus defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

    a.   Failing to select an engine which would properly function under all flight conditions;

    b.   Failing to design and install indications of engine parameters, including, but not limited to, oil pressure which functioned properly;

    c.   Failing to select an engine which properly functioned under all flight conditions;

    d.   Failing to design and manufacture a system which gave reliable indications of engine parameters, including, but not limited to, oil pressure;

    a.   Improperly selecting the powerplant;

    b.   Improperly selecting the turbocharging system;

    c.   Improperly designing of the turbocharging system;

d.      Improperly designing and selecting the fuel delivery system;

e.      Improperly selecting engine components and accessories;

f.      Failing to provide proper warnings concerning loss of power;

g.      Failing to provide proper warnings concerning loss of oil pressure;

h.      Failing to provide proper instructions concerning loss of power;

i.      Failing to provide proper instructions concerning loss of oil pressure;

j.      Failing to properly design and select the oil pressure transducer;

k.      Failing to ensure that fuel would be supplied under all conditions;

l.      Failing to properly test the accident engine;

m.      Failing to provide a means of restoring engine power;

n.      Failing to design and select a proper fuel delivery and metering system;

o.      Selecting a dangerous and defective fuel pump;

p.      Failing to select a boost pump capable of supplying adequate fuel to the engine;

q.      failing to provide an aircraft and aircraft components such that the aircraft was safe for flight;

r.      failing to provide an aircraft and aircraft components and engine system that complied with regulations;

s.      failing to design, manufacture, certify, import and sell an engine that is not prone to power losses;

t.      failing to warn owners, pilots, operators and mechanics of the failures that could occur;

46

u. failing to warn owners, pilots, operators and mechanics of the probability of failures;

v. failing to provide adequate maintenance and/or continuing airworthiness instructions, emergency procedures and warnings for the accident aircraft

w. Failing to properly design and manufacture the CAPS system;

x. Failing to provide adequate instructions for use of the CAPS system;

y. Failing to warn of dangers of CAPS system;

z. Defectively designing an the aircraft which was not crashworthy;

aa. Improperly designing and manufacturing of seats;

bb. Improperly designing passenger restraints;

cc. Failing to prevent against injuries to passengers with the CAPS system;

dd. Defectively designing of the seats and restraints which were not crashworthy;

ee. Improperly selecting materials used in the restraints and seats; and

ff. Other negligent acts which will be determined.

224. As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

225. Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

226.     As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

227.     Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XIX

### (BREACH OF CONTRACT)

### *Plaintiff Brenda Hinkle v. The Cirrus Defendants*

228.     Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

229.     Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants, and Brenda Hinkle was the intended and third party beneficiary to that contract.

230.     In exchange for valuable consideration, the Cirrus defendants did agree to provide him an aircraft.

231.     Plaintiff was the intended beneficiaries of the agreement between the Defendant and the aircraft's owner, where in exchange for an agreement to pay the charges rendered, the defendants would deliver an aircraft and engine and accessories in an airworthy and safe condition.

232.   There also arose an agreement that in exchange for this consideration, the aircraft, engine and components which the Cirrus defendants provided would be safe and airworthy.

233.   The contract evidencing this agreement is attached hereto as Exhibit A.

234.   In breach of that contract, the defendants did fail to supply an aircraft, engine and components as agreed.

235.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XX

## (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

### *Plaintiff Brenda Hinkle v. The Cirrus Defendants*

236.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

237.   The Cirrus defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, integrating and assembling aircraft, including the accident aircraft and its engine and components as well as associated operation, repair, overhaul, installation and product support materials.

238.    The defendants described and advertised their goods for sale, including the accident aircraft, engine and components.  Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

239.    These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

240.    In addition, these defendants provided an express warranty for the accident aircraft, its engine and component parts.

241.    These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft, its engine and component parts.

242.    Defendants expressly and impliedly warranted that the accident aircraft and its engine would operate safely.

243.    These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to the Plaintiffs.

244.    Plaintiffs further relied upon these warranties in operating and traveling in the accident aircraft.

245.    As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels.  These implied warnings ran from Defendants to Plaintiffs.

246.    As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.  These implied warranties ran from Defendants to Plaintiffs.

247.    Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  These implied warranties ran to the Plaintiffs.

248.    By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

249.    The breaches of warranties included the following:

      a.    providing an aircraft and engine components that were not airworthy;

      b.    providing an aircraft and engine that was not safe for flight;

      c.    providing an engine indicating system that was defective;

      d.    providing an aircraft and engine that did not comply with regulations;

      e.    providing engine systems that were not safe for flight;

      f.    providing engine systems that did not comply with regulations;

      g.    providing engine indicating systems that were not safe for flight;

      h.    not providing adequate instructions, warnings and information concerning the accident aircraft and its component parts and systems;

      i.    providing an aircraft and engine which developed unsafe conditions between overhaul periods;

      j.    not providing a crashworthy aircraft; and

k.     providing an engine which did fail during normal flight regimes.

250.    As a direct and proximate result of the foregoing breaches, the accident aircraft lost power and crashed resulting in the above described injuries and damages.

251.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXI

### (FRAUD)

### *Plaintiff Brenda Hinkle v. The Cirrus Defendants*

252.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

253.    These defendants did knowingly misrepresent that its aircraft, engine and components parts, including the engine indicating system, fuel delivery system, and oil system were safe for use and non-defective.

254.    In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in this aircraft and engine, despite knowing the history of engine failures in this model aircraft, and the dangers associated with such a power loss.

255.   The defendants did make this misrepresentation knowingly, to entice customers to purchase their aircraft, engine and components parts, including the engine indicating system, fuel delivery system, and oil system and services.

256.   By warranting, affirming and marketing defective components and aircraft as safe, the defendants intended to entice buyers for their aircraft.

257.   Notwithstanding the actual knowledge of the unreasonably dangerous nature of this aircraft and engine, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

258.   In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft and its engine and components would be safe for flight.

259.   However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft and its engine as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

260.   If not for the Defendant's misrepresentations, omissions and concealment Plaintiffs would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

261.   As a direct and proximate result of the foregoing breaches, the aircraft crashed and the Hinkles suffered damages and injuries described above, as well as pre-impact fear, severe emotional distress, and conscious pain and suffering, serious personal injuries, loss of services, aid and society, pecuniary injuries and damages including, but not limited to, loss of

earnings and earning capacity.   Plaintiffs are entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXII

### (STRICT LIABILITY)

### *Plaintiff Brenda Hinkle v. The Continental Defendants*

262.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

263.   The Continental defendants are in the business of designing, inspecting, testing, distributing, selling, supplying, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing and selling aircraft engines, and are the type certificate holders and/or production certificate holders responsible for ensuring continuing airworthiness for the accident model aircraft engine.

264.   The Continental defendants designed, developed, manufactured, assembled, inspected, distributed, sold supplies, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft engine and its component parts including the engine oil system and fuel delivery system as well as its indication systems, which were, defective and unreasonably dangerous.

265.   In addition the Continental defendants sold the accident aircraft engine, and component parts to its first user.

266.    The dangerous defects which caused this accident existed at the time the accident aircraft engine and component parts were first sold by the Defendants.

267.    The accident aircraft engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident, to Mr. Hinkle.

268.    The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft engine unreasonably dangerous were, but are not limited to:

a.      An inability of the engine to properly function under all flight conditions;

b.      Unreliable indications of engine parameters, including, but not limited to, oil pressure;

c.      Improper selection of the powerplant;

d.      Improper selection of the turbocharging system;

e.      Improper design of the turbocharging system;

f.      Improper design and selection of the fuel delivery system;

g.      Improper selection of engine components;

h.      Improper warnings concerning loss of power;

i.      Improper warnings concerning loss of oil pressure;

j.      Improper instructions concerning loss of power;

k.      Improper instructions concerning loss of oil pressure;

l.      Improper design and selection of the oil pressure transducer;

m.      Failure to ensure that fuel would be supplied under all conditions;

n.      Failure to properly test the accident engine;

o.    Failure to provide a means of restoring engine power;

p.    Failure to select a proper fuel delivery system;

q.    Improper and dangerous selection of the fuel pump;

r.    Improper design of the fuel pump;

s.    Failure to ensure the fuel pump functioned under all conditions;

t.    Failure to select a boost pump capable of supplying adequate fuel to the engine;

u.    Failure to warn owners, pilots, operators and mechanics of the defects in the accident aircraft;

v.    Dangerous and defective design, manufacture, and certification of the aircraft and its powerplant and associated components;

w.    Dangerous and defective failure to warn owners, pilots, operators and mechanics of the failures that could occur; and

x.    Other defects which will be determined.

269.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXIII

(NEGLIGENCE)

### *Plaintiff Brenda Hinkle v. The Continental Defendants*

270.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

271.    The Continental defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller of the accident aircraft engine and associated components, and to ensure the airworthiness of the aircraft engine.

272.    In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

273.    The Continental defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

      a.    Failing to provide an engine which would properly function under all flight conditions;

      b.    Failing to design and install proper indicators of engine parameters, including, but not limited to oil pressure, which functioned properly;

      c.    Improperly designing and manufacturing the powerplant;

      d.    Improperly designing and manufacturing the turbocharging system and its components;

      e.    Failing to properly design and manufacture the induction system;

      f.    Improperly designing and selecting the fuel delivery system;

      g.    Improperly selecting engine components and accessories;

      h.    Failing to provide proper warnings concerning loss of power;

      i.    Failing to provide proper warnings concerning loss of oil pressure;

j.      Failing to provide proper instructions concerning loss of power;

k.      Failing to provide proper instructions concerning loss of oil pressure;

l.      Failing to properly design and select the oil pressure transducer;

m.      Failing to ensure that fuel would be supplied under all conditions;

n.      Failing to properly test the accident engine;

o.      Failing to provide a means of restoring engine power;

p.      Failing to design and select a proper fuel delivery and metering system;

q.      Selecting a dangerous and defective fuel pump;

r.      Failing to select a boost pump capable of supplying adequate fuel to the engine;

s.      Failing to provide an engine and associated components which would be safe and fit for flight;

t.      Failing to provide an aircraft engine system that complied with regulations;

u.      Failing to warn owners, pilots, operators and mechanics of the failures that could occur;

v.      Failing to warn owners, pilots, operators and mechanics of the probability of failures;

w.      Failing to provide adequate maintenance and/or continuing airworthiness instructions, emergency procedures and warnings for the accident aircraft engine; and

x.      Other negligent acts which will be determined.

274.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain

and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

275.   Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

276.   As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

277.   Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXIV

### (BREACH OF CONTRACT)

### *Plaintiff Brenda Hinkle v. The Continental Defendants*

278.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

279.   Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants, who supplied it with a brand new engine supplied by the Continental defendants.

280.   In exchange for valuable consideration, the Continental defendants did agree to provide him an aircraft engine and component parts.

281.   There also arose an agreement that in exchange for this consideration, the aircraft engine and components which the Continental and Cirrus defendants provided would be safe and airworthy.

282.   The contract evidencing this agreement is attached hereto as Exhibit A.

283.   In breach of that contract, the defendants did fail to supply an aircraft, engine and components as agreed.

284.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXV

### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

### *Plaintiff Brenda Hinkle v. The Continental Defendants*

285.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

286.   The Continental defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting,

integrating and assembling aircraft engines, including the accident aircraft engine and components as well as associated operation, repair, overhaul, installation and product support materials.

287.   The defendants described and advertised their goods for sale, including the accident aircraft engine and components.  Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

288.   These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

289.   In addition, these defendants provided an express warranty for the accident aircraft engine and component parts.

290.   These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft engine and component parts.

291.   Defendants expressly and impliedly warranted that the accident aircraft and its engine would operate safely.

292.   These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiff.

293.   Plaintiffs further relied upon these warranties in operating and traveling in the accident aircraft.

294.   As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the

promises and affirmations of fact made on their containers and labels. These implied warnings ran from Defendants to Plaintiff.

295. As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods. These implied warranties ran from Defendants to Plaintiff.

296. Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe. These implied warranties ran to the Plaintiffs.

297. By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

298. The breaches of warranties included the following:

    a. Providing an aircraft engine components that were not airworthy;

    b. Providing an aircraft engine that was not safe for flight;

    c. Providing an engine indicating system that was defective;

    d. Providing an aircraft engine that did not comply with regulations;

    e. Providing engine systems that were not safe for flight;

    f. Providing engine systems that did not comply with regulations;

    g. Providing engine indicating systems that were not safe for flight;

    h. Not providing adequate instructions, warnings and information concerning the accident aircraft and its component parts and systems;

i.   Providing an aircraft engine which developed unsafe conditions between overhaul periods; and

j.   Providing an engine which did fail during normal flight regimes.

299.   As a direct and proximate result of the foregoing breaches, the accident aircraft lost power and crashed resulting in the above described injuries and damages to Plaintiff.

300.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings. Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXVI

### (FRAUD)

### *Plaintiff Brenda Hinkle v. The Continental Defendants*

301.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

302.   These defendants did knowingly misrepresent that its aircraft engine and components parts, including the engine indicating system, fuel delivery system, and oil system were safe for use and non-defective.

303.   In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in this aircraft engine, despite knowing the history of engine failures in this model, and the dangers associated with such a power loss.

304.   The defendants did make this misrepresentation knowingly, to entice customers to purchase their engine and components parts, including the engine indicating system, fuel delivery system, fuel pump, and oil system and services.

305.   By warranting, affirming and marketing defective components and the aircraft engine as safe, the defendants intended to entice buyers for their engines.

306.   Notwithstanding the actual knowledge of the unreasonably dangerous nature of this aircraft engine, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

307.   In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft engine and components would be safe for flight.

308.   However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft engine and component parts as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

309.   If not for the Defendant's misrepresentations, omissions and concealment, Plaintiff would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

310.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain

and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXVII

### (STRICT LIABILITY)

### *Plaintiff Brenda Hinkle v. The Sensor Defendants*

311.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

312.    The Sensor defendants are in the business of designing, inspecting, testing, distributing, selling, supplying, overhauling, rebuilding, servicing, supporting, maintaining and/or repairing components used in the indicating system of the accident aircraft, including but not limited to, the oil pressure transducer.

313.    The Sensor defendants designed, developed, manufactured, assembled, inspected, distributed, sold supplies, overhauled, rebuilt, serviced, supported, maintained, modified and/or repaired the accident aircraft's engine sensors, including the oil pressure transducer.

314.    In addition these defendants sold the oil pressure transducer and other sensors for use in the accident aircraft, its engine, and component parts to its first user.

315.    The dangerous defects which caused this accident existed at the time the component parts were first sold by the Defendants.

316.    The accident aircraft, its engine and component parts were in the same condition at the time of the accident as they were when first sold, just shortly before the accident.

317.    The dangerous defects, which included a failure to have everything necessary to make the aircraft safe, and which rendered the aircraft and its engine unreasonably dangerous included, but are not limited to:

a.      An inability of the oil pressure transducer to properly function under all flight conditions;

b.      Unreliable indications of engine parameters, including, but not limited to, oil pressure;

c.      Defective design of the oil pressure transducer;

d.      Defective manufacture of the oil pressure transducer;

e.      Failure to design a transducer not prone to premature failure;

f.      Failure to warn of false readings;

g.      Failure to provide a means of safeguarding against false readings;

h.      Failing to provide sufficient maintenance instructions;

i.      Failing to provide sufficient operating and installation instructions;

j.      Failing to design transducers with failsafe measures which prevent against incorrect readings without a warning of their falsity;

k.      Failing to report product failures;

l.      Failure to sufficiently test the sensors in the accident aircraft, including but not limited to the oil pressure transducer;

m.      Failure to ensure proper wiring of the sensors in the accident aircraft;

n.      Failure to properly integrate the sensors with the avionics in the accident aircraft;

o.      Failing to provide an means of verifying the accuracy of readings from sensors in the accident aircraft, including specifically the oil pressure transducer; and

p.      Other defects which will be proven at trial.

318.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXVIII

### (NEGLIGENCE)

### *Plaintiff Brenda Hinkle v. The Sensor Defendants*

319.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

320.   The Sensor defendants owed duties to the Plaintiff to act as a reasonably prudent manufacturer, designer, and seller sensor and transducer components used in the accident aircraft and its engine.

321.   In addition to the duties imposed by common law, these defendants were subject to duties imposed by regulatory law.

322.    The Sensor defendants breached this duty and were negligent, grossly negligent, and reckless by virtue of the following:

a.    Failing to select an engine which would properly function under all flight conditions;

b.    Designing and manufacturing an oil pressure transducer which would not properly function under all flight conditions;

c.    Failing to provide transducers which gave reliable indications of engine parameters, including, but not limited to, oil pressure;

d.    Defectively designing the oil pressure transducer;

e.    Defectively manufacturing the oil pressure transducer;

f.    Failing to design a transducer not prone to premature failure;

g.    Failing to warn of false readings;

h.    Failing to provide a means of safeguarding against false readings;

i.    Failing to provide sufficient maintenance instructions;

j.    Failing to provide sufficient operating and installation instructions;

k.    Failing to design transducers with failsafe measures which prevent against incorrect readings without a warning of their falsity;

l.    Failing to report product failures;

m.    Failing to sufficiently test the sensors in the accident aircraft, including but not limited to the oil pressure transducer;

n.    Failing to ensure proper wiring of the sensors in the accident aircraft;

o.    Failing to properly integrate the sensors with the avionics in the accident aircraft;

p.      Failing to provide an means of verifying the accuracy of readings from sensors in the accident aircraft, including specifically the oil pressure transducer; and

q.      Other negligent acts which will be proven at trial.

323.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.  Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

324.    Further, the Plaintiff was an occupant of the accident aircraft when it crashed, and therefore experienced and observed the accident sequence, engine power loss, and was within the zone of danger of the accident.

325.    As a direct and proximate result of the Defendants' negligence and/or defective products, the Plaintiffs have suffered, and continues to suffer emotional injuries which were a direct result of the accident and foreseeable to the Defendants.

326.    Plaintiff suffered the aforementioned injuries and damages as a direct result from the sensory and contemporaneous observance of the accident and of the injuries to one another and make a claim for negligent infliction of emotional distress.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXIX

### (BREACH OF CONTRACT)

*Plaintiff Brenda Hinkle v. The Sensor Defendants*

327.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

328.    Plaintiff Robert Hinkle bought his aircraft directly from the Cirrus defendants which contained component parts supplied from the Sensor defendants, and Plaintiff Brenda Hinkle was the intended beneficiary of this contract.

329.    In exchange for valuable consideration, these defendants did agree to provide sensors, including the oil pressure transducer, which were safe and free of defects.

330.    There also arose an agreement that in exchange for this consideration, components supplied by the Sensor defendants would be safe for use and airworthy.

331.    Plaintiff was the intended beneficiary of this contract.

332.    The contract evidencing this agreement is attached hereto as Exhibit A.

333.    In breach of that contract, the defendants did fail to supply components as agreed.

334.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXX

### (BREACH OF EXPRESS AND IMPLIED WARRANTIES)

*Plaintiff Brenda Hinkle v. The Sensor Defendants*

335.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

336.    The Sensor defendants are now, and were at all times material hereto, merchants engaged in the business of designing, manufacturing, selling, supplying, supporting, integrating and assembling sensors and transducers, including those used in the accident aircraft and its engine and components as well as associated operation, repair, overhaul, installation and product support materials.

337.    The defendants described and advertised their goods for sale, including the transducers used on the accident aircraft, engine and components.  Such descriptions and advertisements included, but were not limited to, advertising brochures, instructions, manuals, specification sheets, order sheets, and other product statements.

338.    These descriptions and affirmations concerning the goods resulted in express warranties that the goods sold by the defendants were as described and safe for their intended use.

339.    In addition, these defendants provided an express warranty for the accident aircraft transducers, specifically its oil pressure transducer.

340.    These descriptions, representations, and affirmations resulted in oral and written express and implied warranties which regard the accident aircraft's components, specifically its oil pressure transducer.

341.    Defendants expressly and impliedly warranted that the accident aircraft's components, specifically its oil pressure transducer, would operate safely.

342.    These descriptions, affirmations, and express warranties became part of the bases of the bargain of their sales and said warranties ran to Plaintiffs.

343.    Plaintiff further relied upon these warranties in operating the accident aircraft.

344.    As a result of the sales activities of the Defendants, each and all of them, expressly and impliedly warranted that their individual goods were merchantable, fit for their ordinary purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on their containers and labels.  These implied warnings ran from Defendants to Plaintiffs.

345.    As a result of the sales activities of the Defendants, each and all them impliedly warranted that their goods were fit for their particular purpose, and each and all knew that their skill and judgment would be relied upon and were, in fact, relied upon by the purchaser of their individual goods.  These implied warranties ran from Defendants to Plaintiff.

346.    Because the Defendants are merchants as to their goods offered for sale, there arises as a result of the "course of dealings" and "usage of trade" an implied warranty that each of their individual goods are safe.  These implied warranties ran to the Plaintiff.

347.    By selling defective goods, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

348.    The breaches of warranties included the following:

      a.    Providing sensor components, including the oil pressure transducer, that was defective and not airworthy;

      b.    providing sensor components, including the oil pressure transducer, that was not safe for flight;

        c.      providing and integrating engine indicating system components that were defective;

        d.      providing components that did not comply with regulations;

        e.      not providing adequate instructions, warnings and information concerning the sensor components, including the oil pressure transducer; and

        f.      providing an components which developed unsafe conditions between overhaul periods and within their useful life.

349.   As a direct and proximate result of the foregoing breaches, the accident aircraft indicated zero oil pressure, and subsequently lost power and crashed resulting in the above described injuries and damages to Plaintiff.

350.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXXI

### (FRAUD)

### *Plaintiff Brenda Hinkle v. The Sensor Defendants*

351.   Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

352.    These defendants did knowingly misrepresent that it's the parts, including the oil pressure transducer, were safe for use and non-defective.

353.    In addition, the defendants did also fail to disclose the high probability that a dangerous condition would develop in the parts they supplied, despite knowing the history of such failures, and the dangers associated with such a failure.

354.    The defendants did make this misrepresentation knowingly, to entice customers to purchase their transducers and sensors.

355.    By warranting, affirming and marketing defective components as safe, the defendants intended to entice buyers.

356.    Notwithstanding the actual knowledge of the unreasonably dangerous and defective nature of component, the defendants willfully failed to make corrections and modifications and failed to disclose to current and prospective owners of this aircraft and engine and component parts of its dangers.

357.    In fact, the Plaintiff, and operators, owners and passengers relied on the representation by the Defendants, and each of them, that the aircraft and its engine and components would be safe for flight.

358.    However, due to the fraud committed by each of the Defendants in constructing, designing, manufacturing and marketing the accident aircraft and its engine and sensor components as safe for flight when in fact it is not, the defendants did cause Plaintiffs' injuries.

359.    If not for the Defendant's misrepresentations, omissions and concealment Plaintiffs would not have flown in the accident aircraft and therefore would not have suffered their damages due to this engine failure.

360.    As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

## COUNT XXXII

### (RECKLESSNESS, OUTRAGEOUSNESS, WILLFUL AND WANTON CONDUCT)

### *Plaintiff Brenda Hinkle v. All Defendants*

361.    Plaintiff incorporates the above paragraphs as though fully set forth at length herein.

362.    Defendants, and each and every one of them, knew that the failure to properly design, manufacture, inspect, maintain, and/or repair the accident aircraft, its engine, fuel delivery system, oil system, engine indicating system, oil pressure transducer, fuel pump and/or associated materials would inevitably result in loss of engine power with the likelihood of serious personal injury or death.

363.    Notwithstanding the actual knowledge of the defects and deficiencies in the accident aircraft, its engines, fuel delivery system, oil system, fuel pump, oil pressure transducer, and/or associated materials, Defendants recklessly, willfully, wantonly, and/or outrageously, and in dereliction of their responsibilities failed to correct said defects or warn of said defects and likelihood of serious personal injury and/or death.

364.   As a direct and proximate result of the foregoing conduct, Plaintiff Robert Hinkle suffered the above damages as well as pre-impact fear, severe emotional distress, conscious pain and suffering, serious personal injuries, loss of services, aid and society, loss of consortium, pecuniary injuries and damages as well as loss of earnings.   Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against these defendants for all damages permitted by law, plus attorney's fees, costs and interest as may be allowed by law, and requests trial by jury of all issues triable as a right by a jury.

**JURY TRIAL DEMANDED**

Mark H. Perenich, Esquire
FBN 436399
Perenich, Caulfield, Avril & Noyes, P.A.
1875 North Belcher Road, Suite 201
Clearwater, FL  33765
Tele:  727-796-8282
Fax:  727-797-6337
Primary Email:  Mark@usalaw.com
Secondary Email:  Linda@usalaw.com